LAWN, ESTATE OF, IN RE.

Probate Court, Franklin County.

No. 204342.   Decided June 29, 1962.

310

*Mr. Guy Martin*, for executrix.

*Mr. John Dilenschneider*, assistant attorney general, for the Tax Commissioner.

To The Honorable Joseph J. Van Heyde, Judge of
The Probate Court of Franklin County, Ohio

WHEAT, General Referee. Pursuant to a prior order referring the above entitled proceeding to me for hearing and report, I proceeded under the provisions of Section 2315.37, Revised Code, to hear and examine such proceeding and respectfully submit the following report thereon.

*Statement of Facts*

This case was heard May 25th, 1962, on exceptions filed by the executrix to the Journal Entry Determining Inheritance Tax. Exceptions were taken to the inclusion for taxation of bearer bonds valued at date of death in the amount of $22000.00. The court included the bearer bonds in its tax determination although the same were not listed at all by executrix in her application for tax determination.

At the May 25th, 1962, hearing the only controversy related to that part of the exceptions as follows:

"We further except to the finding of the Court for the reason that the Court has ordered tax paid on the contents of an envelope in the estate for the purpose of taxation, the personal property belonging to Dorothy M. Lawn, in the sum of $22000.00."

"We request a hearing on these exceptions and particularly with reference to the inclusion in this estate of the personal property of Dorothy M. Lawn found in a joint safe deposit box of the decedent and surviving spouse, Dorothy M. Lawn."

"It is the contention of this exceptor that this personal property of Dorothy M. Lawn does not belong in the estate and is not subject to taxation."

The exceptions were verified by attorney for executrix as having personal knowledge of the facts. The bonds subject to the exceptions are not identified in the exceptions but the serial numbers and value of each are listed in an affidavit by Dorothy M. Lawn, surviving spouse and executrix under the decedent's will. The affidavit was filed November 3rd, 1961, same date as the inventory was filed. The estate file does not indicate that any exceptions to the inventory were filed and the affidavit lists thirty-five United States Savings Bonds, payable to bearer, which the affidavit avers were the personal property of the

affiant at date of decedent's death and were kept in a safe deposit box listed in the joint names of decedent and the affiant, Dorothy M. Lawn, at the Tremont Branch of the Ohio National Bank. The affidavit indicates that the safe deposit box contained other United States Savings Bonds, payable on death, to Dorothy M. Lawn, wife, and other bonds, "payable to decedent or to Dorothy M. Lawn, which were held jointly by the decedent and this affiant."

As to the thirty-five bearer bonds the affidavit states aliunde:

"- - - in said safe deposit box, in an envelope, written on the envelope in the personal handwriting of decedent, Joseph M. Lawn, was the following statement: 'Personal Property of Dorothy M. Lawn,' and that in said envelope were the following U. S. Savings Bonds, payable to bearer as follows:"

The affidavit then lists the serial number of each of the thirty-five bonds. The last paragraph explains that the bonds represent a division of decedent's estate before death and expresses executrix's sentiments that she should not have to pay "an estate tax" on her own personal property and that the estate was accumulated through her uxorial cooperation and thrift. The thirty-five bearer bonds were not listed in the inventory.

At the May 25th hearing the executrix was her own and only witness and her testimony established: that she was the surviving spouse and sole heir under the will of decedent who expired September 2nd, 1961; was married to him in 1926; two children were issue of the marriage and generally the statements contained in the affidavit. In addition, she testified that: decedent retired in June 1951 and was in bad health for about ten years prior to death and he expired suddenly from heart failure. Admittedly, she did not purchase any of the thirty-five bearer bonds but her husband did during the period 1938-1945, the last bond being purchased in 1945. She testified that each time her husband bought a bearer bond he would place it in the envelope with her name on it in the safe deposit box and tell her that he had purchased another bond for her. The envelope became so old a new one with her name written on it was procured. She did not know if decedent ever paid any gift tax on the bearer bonds.

Over the years, both decedent and the witness would visit the safe deposit box to tear off the interest coupons. She last visited the box two weeks prior to decedent's death to obtain money to repair the roof of their home and the decedent was physically unable to get there. Besides the bonds, the witness contends he also gave her cash as an act of generosity.

The Attorney General's Office other than cross-examining the witness, presented no case, either testimony or exhibits.

### Law

A gift inter vivos is a donation between living persons consisting of: (1) an immediate, (2) voluntary, (3) gratuitous, (4) unconditional and (5) irrevocable transfer of property. The elements are: (1) donative intent, (2) delivery and (3) acceptance. 26 Ohio Jurisdiction (2d), Section 7. Retention of power of revocation precludes a gift although a valid gift in trust to a third person with enjoyment of the property delayed until the donor's death is effective. *Ibid*, Section 8. While it is not always necessary to have a physical delivery, the nature of the delivery depends upon the character of the thing given. *Ibid*, Section 17. Delivery of a key to a room or safe deposit box may constitute delivery but not where the articles are capable of manual delivery and donee does not take into his actual possession during donor's lifetime.

A gift of bonds can not be made if donor retains them in his possession and receives the income therefrom but a donor can make a valid gift and retain a life income in the subject of the gift. *Ibid*, Section 26. Delivery of a key from husband to wife to a safe deposit box held in their joint names is not sufficient delivery to complete a gift especially where the subject is capable of delivery and there is no reason for symbolic delivery. 24 American Jurisprudence, Gifts, Section 89, at page 776. If delivery involved an assignment or conveyance in writing delivered to donee, the subsequent possession by donor of the notes or bonds will not vitiate the already completed gift. *Ibid,* Section 92, page 777.

In the absence of independent evidence, property found in the joint possession of a husband and wife may raise a presumption of title in the husband, the wife, or in both jointly. 26 American Jurisprudence, Husband & Wife, Section 92, page

718, however in the instant case the facts require that we find the bearer Bonds all in the husband or wife's name since they were purchased entirely with the husband's money and claimed as a gift by the wife. There is no middle ground. The mere proof of bearer bonds held in a safe deposit box would be inconclusive and there would likely be insufficient delivery to consummate an alleged gift. *Bolles* v. *Toledo Trust Co.*, 132 Ohio St., 21 and *In re Copeland's Estate*, 74 Ohio App., 164.

In the instant case the claimant must establish title on something more than the mere presence in the safe deposit box. The evidence indicates clear donative intent by the decedent and it is his own handwriting on the envelope in the safe deposit box which clearly indicates a gift. Another significant fact to be observed in the close question herein is the fact that the bonds were transferred to a new box from the main office of the bank to a branch office. Quite possibly this could be considered completion of delivery as in *Estate of Green*, 39 Ohio Law Abs., 141. In that case the court found a completed gift of a bond in an envelope with donee's name on it written by donor and that donee after delivery had returned the bond to the donor to act as his bailee for safekeeping: An actual handing over of the bonds occurred however and donee had exclusive possession if only for a brief time. In *Moll* v. *Moll*, 11 Ohio Opinions (2d), 283, the alleged donor had the safe deposit box in his own name and in it an envelope on which he wrote the purported donee's name as the owner. The purported donee was a brother and was given a duplicate key with the information that there was money in it for him. The court held there was no gift made, the element of delivery was lacking. The purported donee had access but never entered the box. Evidence was insufficient to overcome the presumption that money found in the box at death belonged to the decedent. Compare with the *Stevenson case, supra.*

A joint safe deposit box creates either a bailment or landlord-tenant relationship, the question not definitely settled in Ohio; a joint deposit account creates a debtor creditor relationship with the bank. Thus, applicable law is different between bank accounts and safe deposit boxes. No passage of title occurs merely by placing property in a joint safe deposit

box. *In re Copeland's Estate*, 74 Ohio App., 164. A safe deposit box is merely a conduit and unless further facts occur, placement therein cannot constitute delivery.

Did Mr. Lawn make delivery of the bonds to the wife? Apart from the self serving testimony of Mrs. Lawn, there is no independent evidence of the total number of bearer bonds decedent purchased or, that the wife was informed of the specific bonds or the serial number of the ones purportedly given to her. (No third person saw or knew of the specific bearer bonds or the list kept.) The specific identity was not revealed to any third person until decedent's death. Since coupons were detached, the envelope containing the bonds was apparently open at all times so that the decedent conceivably could retrieve the bonds, allegedly given, at any time. The bonds were not placed at anytime in the wife's sole possession prior to being placed in the safe deposit box. The presence of other bonds payable to the wife on death, the lack of evidence that the wife had no other property in the box and never withdrew or cashed even one of the bonds—all indicate the joint deposit box contained the husband's property in a convenient way to enable the wife to have access to them when he was incapacitated and to avoid probate administration. The last bond was allegedly given in 1945 but time however long can not cure the missing element of an attempted gift. The words "personal property of Dorothy M. Lawn" while language a layman may often use, is also the language lawyers would never fail to use. The placing of bearer bonds in an unsealed envelope in a safe deposit box held jointly with his wife, creates inferences of other arrangements as well as attempted gift.

The decedent died suddenly; that the wife was to visit the box before his death holds no significance.

If the wife received an inheritance from a relative and had a separate estate, the evidence does not reveal if she held any of it in the box or what other boxes or accounts both spouses held. No evidence of gift tax payment was presented which would be evidentiary of donative intent to make a gift in presenti. The joint safe deposit box has a significance apart from the gift theory. The failing health and incapacity of decedent made it necessary for his wife to have access to his box.

Likewise the fact both spouses detached interest coupon from the bearer bonds is ambiguous and could serve conflicting arguments and therefore not persuasive. She could have been the agent of decedent.

"Dorothy Lawn, with the knowledge and consent of donor had exercised dominion over the bonds in question and had clipped the coupons." (See page five, executrix's brief.)

A donee does not need consent or knowledge of the donor to clip coupons. Even if Mr. Lawn intended a gift in the presenti and had thought he made one, the Ohio Supreme Court said in the *Bolles case*, 132 Ohio St., 30:

"- - - there can be little doubt that he intended his wife to have the securities and thought he had effectuated such desire, but we are equally satisfied that there is not that quantum of positive evidence to show necessary compliance with the mandate of the law respecting the consummation of a gift. In other words, the evidence as a whole does not present clear and convincing details of a gift accomplished—a complete severance of the ties of ownership by the donor with absolute and irrevocable finality."

The executrix is also the purported donee and sole beneficiary under the will making her sole concern the question of taxation.

The case of *In re Stevenson Estate*, 79 Ohio App., 315, cited by counsel for executrix, indicates that a gift of bearer bonds was made by placing them in an envelope and the donor wrote thereon "all of the contents of this envelope belong to Everett O. Newman" followed by donor's signature and placed in a safe deposit box in donor's name. The court found that delivery was completed by delivery of the only key to the box to donee. The relinquishment of the key put the subject of the gift beyond donor's control. This, the Court said, distinguished the *Stevenson case* from the *Bolles case* where the purported donor re-entered the safe deposit box forty-nine times before death. Also vital in the *Stevenson case* was the testimony of a third party witness who testified as to the delivery of the key and heard donor's expression of donative intent and, the observation by the trial court that had Mrs. Stevenson died before delivering the key to the donee her whole plan would have had no legal effect. *Ibid*, page 318.

*Kinney* v. *Wasserman*, 105 Ohio App., 366, cited by executrix involves delivery to a third party to hold as trustee for the donee. Your referee agrees with the holding in this case but again, a third party was involved, an element not present in the instant case and vital as to proof. It is agreed decedent purchased the bonds and was original owner and this fact is presumed to continue until proven otherwise. 21 Ohio Jurisprudence (2d), Section 124. No income tax returns were submitted in evidence.

For cases similar to the *Lawn case* denying a gift for lack of delivery see *Casey* v. *Topliffe*, 80 Fed. (2d), 543; *Re Wilson's Estate*, 88 N. E. (2d), 662; *Taylor* v. *Taylor*, 290 N. W., 341; *In re Squibbs Estate*, 160 N. Y. S. 826; *In re Bashford's Estate*, 34 N. Y. S. (2d), 678; *Estate of Margaret H. Durant*, No. 168690, Franklin County Probate Court, page 109-116, September 12th, 1957.

The decedent never placed the bonds beyond his control for even five minutes. He did give the wife access to the bonds and his intended gift failed because he equated access with the affirmative act of delivery the law required on his part. Mrs. Lawn could have completed the gift by acquiring possession but she did not.

The burden to establish a gift is on the alleged donee by clear and *convincing evidence.* 26 Ohio Jurisprudence (2d), Sections 35, 42. The executrix has not met this burden of proof and your referee believes the entry of inheritance tax determination previously entered by this court should be affirmed.