# IN THE COURT OF APPEALS OF IOWA

No. 23-0337
Filed January 10, 2024

**IN THE MATTER OF THE ESTATE OF JOHN DOHERTY, Deceased,**
**Paul Doherty, Administrator,**
       Appellant,

**v.**

**LAUREN BOSSEN,**
       Appellee.
_____

Appeal from the Iowa District Court for Polk County, Katie Ranes, District Associate Judge.

The administrator of an estate appeals the denial of his application for an order requiring delivery of property. **AFFIRMED.**

Louis R. Hockenberg and Jeffrey P. Schultz of Sullivan & Ward, P.C., West Des Moines, for appellant.

Fred L. Dorr and Mark R. Adams of Wasker, Dorr, Wimmer & Marcouiller, P.C., West Des Moines, for appellee.

Considered by Tabor, P.J., and Schumacher and Buller, JJ.

**BULLER, Judge.**

Paul Doherty, in his capacity as administrator of his father John Doherty's estate, appeals the denial of his application for an order requiring delivery of property. Paul alleges Lauren Bossen, his daughter and John's granddaughter, is wrongfully in possession of proceeds from the sale of John's home before his death. We affirm the probate court.

## I. Background Facts and Proceedings

Lauren and her grandfather John had a close relationship for the decade or so preceding John's death. Lauren was first added as a power of attorney to one of John's bank accounts in 2012 and was later added as a joint owner with right of survivorship to that account in 2016 and to another bank account in 2018.

In 2019, about three years before his death, John executed a durable power of attorney, appointing Lauren as his attorney in fact and granting her authority to "perform any acts that [John] could perform personally," including signing on his behalf for purposes of real estate and financial transactions. Relying on this power of attorney, Lauren later sold John's home to pay for his move to a skilled-care facility. Lauren directed proceeds from that sale be placed into one of the accounts she and John held jointly.

When John died in June 2022, the joint accounts passed to Lauren, and this probate matter was opened. Paul was appointed administrator of the estate, and he filed an application for an order requiring delivery of property. The application sought to compel Lauren to pay the estate cash equivalent to the proceeds from selling the house. Lauren resisted, explaining the facts we have laid out in this opinion. She also alleged that Paul and John were estranged and she had stepped

up to care for John because Paul failed to do so. Lauren submitted as exhibits letters concerning when she was added to the joint account.

We cannot discern from the record whether a hearing was held on this issue after Paul filed the application. A reported hearing was held in October 2022 on a motion to partially quash a subpoena. It is unclear if the hearing addressed Paul's application for delivery of property. In any event, the appellant did not order a transcript of this hearing in his combined certificate, so it is not before us on appeal. *See In re F.W.S.*, 698 N.W.2d 134, 135 (Iowa 2005) ("It is the appellant's duty to provide a record on appeal affirmatively disclosing the alleged error relied upon.").

We can tell from the record that Lauren was deposed approximately two months after the hearing. Paul filed another application for order requiring delivery of property but still offered no evidence beyond his pleadings. Lauren again resisted, noting the necessity of her actions to meet John's needs. It does not appear any hearing, reported or otherwise, was held on the renewed application.

The probate court denied the application by written order, finding the joint bank accounts (including the deposited proceeds) belonged to Lauren upon John's death and were not part of the estate. The probate court noted it "seems apparent [John] and [Lauren] shared a close familial relationship," and "[did] not find it unusual or suspicious" that the proceeds were placed into the joint account or that John intended Lauren to receive whatever funds remained in the account after his death.

After the written order was entered, Paul filed a motion to enlarge and modify and attached a transcript of Lauren's deposition.[1]  Lauren again resisted, highlighting the degree of estrangement between Paul and John (including that Paul never visited John while he was ailing) and urged the probate court to deny the motion because it was a re-hash of arguments already considered.  The probate court denied the motion, and Paul appeals.

## II.     Standard of Review

This probate matter was heard in equity, and our review is de novo.  *See* Iowa Code § 633.33 (2022) ("Actions to set aside or contest wills, . . . and for the establishment of contested claims shall be triable in probate as law actions, and all other matters triable in probate shall be tried by the probate court as a proceeding in equity"); Iowa R. App. P. 6.907 ("Review in equity cases shall be de novo.").

## III.    Discussion

Paul contends on appeal that it is "beyond controversy" the proceeds of the home sale belong to the estate, rather than Lauren.  *See In re Est. of Samek*, 213 N.W.2d 690, 692 (Iowa 1973).  Like the probate court, we disagree with Paul's contention and find ownership of the bank accounts at issue transferred to Lauren upon John's death.

Bank accounts held in joint tenancy are not part of an estate and are not devisable by will.  *See In re Est. of Kiel*, 357 N.W.2d 628, 631 (Iowa 1984); *In re*

---

[1] We do not consider any attachments to Paul's 1.904(2) motion that were not before the court when it ruled on the application.  *See McKee v. Isle of Capri Casinos, Inc.*, 864 N.W.2d 518, 525 (Iowa 2015); *Sierra Club Iowa Chapter v. Iowa Dep't of Transp.*, 832 N.W.2d 636, 641 (Iowa 2013).

*Est. of Roehlke*, 231 N.W.2d 26, 28 (Iowa 1975). "Joint tenancy property is property held by two or more parties jointly, with equal rights to share in the enjoyment of the whole property during their lives, and a right of survivorship which allows the surviving party to enjoy the entire estate." *In re Est. of Kirk*, 591 N.W.2d 630, 634 (Iowa 1999).

A bank account is held in joint tenancy when it is in two names and expressly made payable to either the decedent or to the survivor. *See Roehlke*, 231 N.W.2d at 28. The determinative question is whether the person establishing these accounts intended to create a joint tenancy. *Id.* Extrinsic evidence may be admissible to determine intent. *See Petersen v. Carstensen*, 249 N.W.2d 622, 625 (Iowa 1977).

Here, there is little or no question that the bank accounts where the proceeds were deposited were jointly owned by John and Lauren. Although not a model of clarity, it seems Paul's argument pivots from here to argue that, if the account was in fact jointly held, Lauren depositing the proceeds into the joint accounts was an unlawful gift. We reject this argument.

One acting under power of attorney may not make gifts absent express authority. *In re Est. of Crabtree*, 550 N.W.2d 168, 170 (Iowa 1996). But our supreme court, in a case reminiscent of this one, held a gift requires divestment "of all control and dominion over the subject" property. *Id.* (citation omitted). In other words, the transfer of dominion and control must be an actual, present transfer of property—not an expectancy or future transfer. *Id.*

Depositing the sale proceeds into the joint accounts did not divest John of control or dominion over the money. At best, Lauren had an expectant future

interest in the funds, received only upon John's death and only if the funds were not spent on John's end-of-life care before then. In this way, the case here mirrors *Crabtree*, where the interest in funds subject to dispute was contingent on the decedent (or those acting on his behalf) not exhausting the funds before death. *See id.* at 170–71. And like in *Crabtree*, we find no improper gift or basis for reversal on this limited record. *See id.*

Paul also requests we hold the probate court's denial of his motion "should not foreclose [the] administrator's rights to bring a regular action" at some later date. This issue is not properly before us, as Paul failed to make that argument to the lower tribunal or obtain a ruling on it. *See, e.g.*, *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). To the extent Paul claims in his reply brief that the 2017 amendment to Iowa Rule of Civil Procedure 1.904 allows him to bypass the error-preservation requirements, we conclude he misunderstands or misstates the amendment. As made clear by the accompanying comment, the 2017 amendment dealt solely with whether an arguably improper post-trial motion tolled the time to file a notice of appeal. *See* Iowa R. Civ. P. 1.904(3)–(4) cmt. In other words, the amendment had nothing to do with error-preservation. And to the extent Paul contends we should find some type of "due process violation" notwithstanding his failure to preserve error, controlling case law firmly closes that door. *See*, *e.g.*, *State v. Treptow*, 960 N.W.2d 98, 109 (Iowa 2021) ("We have repeatedly rejected plain error review and will not adopt it now.").

Last, Paul makes a passing reference to a request for attorney fees awarded under Iowa Code section 633B.117. Because Paul failed to properly allege or prove Lauren violated her duties as power of attorney, we deny his request.

With no reversible error properly before us, we affirm the probate court.

**AFFIRMED.**